FILED

April 21 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0392

DA 14-0392

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 110

IN RE THE MARRIAGE OF:

DELYNN ARNESON AXELBERG,

      Petitioner and Appellant,

  and

TRACY A. AXELBERG,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-11-357(D)
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Marybeth M. Sampsel, Measure, Sampsel, Sullivan & O'Brien, P.C.;
Kalispell, Montana

      For Appellee:

            P. Mars Scott, Ruth B. Anderson, P. Mars Scott Law Offices; Missoula,
Montana

Submitted on Briefs:  March 11, 2015
Decided:  April 21, 2015

Filed:

                     Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Delynn Axelberg appeals from the order of the Montana Eleventh Judicial District Court, Flathead County, dissolving her marriage with Tracy Axelberg, dividing the marital estate, and ordering child support.  We affirm.

## ISSUES

¶2     We review the following issues:

*1.  Did the District Court abuse its discretion by failing to consider the net worth of the marital estate before dividing the property?*

*2.   Did the District Court err by awarding Tracy certain pre-marital and post-separation property?*

*3.  Did the District Court abuse its discretion by refusing to award maintenance in favor of Delynn?*

*4.  Did the District Court err by retroactively modifying Tracy's obligations under the Interim Support Agreement?*

*5.  Was the District Court's child support order clearly erroneous or an abuse of discretion?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Delynn and Tracy married on September 5, 1998.  They separated on February 6, 2010, and Delynn filed a petition for dissolution of marriage on June 2, 2011.  In February 2012, while the case was pending, the parties entered an Interim Support Agreement (ISA).  In it, the parties settled all maintenance and support issues through February 1, 2012, and agreed that beginning on February 1, 2012, Tracy would pay

$5,000 per month to Delynn in temporary support. The matter went to trial beginning on May 14, 2012, and the District Court entered an order dissolving the marriage on May 22, 2014. In it, the District Court ordered Tracy to pay $2,225 per month to Delynn in child support, decided that an award of maintenance was not appropriate, terminated Tracy's temporary support obligations under the ISA, made the termination retroactive to the first day of trial, and divided the parties' property between them. In dividing the property, the District Court made detailed findings of fact and issued specific instructions regarding each item of property. It also listed the marital values and the amounts distributed to each spouse in a spreadsheet titled "Property Distribution Schedule" that it attached to the order as an appendix.

**STANDARDS OF REVIEW**

¶4 We review a district court's findings of fact in a dissolution proceeding to determine whether they are clearly erroneous. *In re Marriage of Crilly*, 2009 MT 187, ¶ 9, 351 Mont. 71, 209 P.3d 249. A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us that the district court made a mistake. *Crilly*, ¶ 9. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *Crilly*, ¶ 9. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Crilly*, ¶ 9.

3

**DISCUSSION**

¶5 *1. Did the District Court abuse its discretion by failing to consider the net worth of the marital estate before dividing the property?*

¶6 Delynn contends that the District Court did not make a specific finding of fact regarding the net worth of the estate and that it made several computational errors in apportioning individual assets. For these reasons, she argues that the District Court did not know the net worth of the estate and could not have apportioned it equitably. She argues that the District Court abused its discretion in apportioning the estate for these reasons. We disagree.

¶7 District courts are required to "equitably apportion" the property in a marital estate. Section 40-4-202(1), MCA; *In re Marriage of Crowley*, 2014 MT 42, ¶ 26, 374 Mont. 48, 318 P.3d 1031. Apportionment should be equitable in light of the net worth of the estate. *See In re Marriage of Lewton*, 2012 MT 114, ¶ 15, 365 Mont. 152, 281 P.3d 181. This does not mean that district courts are required to make a specific finding of net worth before apportioning an estate. Instead, district courts must make findings that are sufficient for this Court to determine the net worth of the estate and to review whether the marital distribution is equitable. *Crowley*, ¶ 26. We have stated in the past that it is sufficient for district courts to consider and to determine the value of each asset and liability of the parties. *Crowley*, ¶ 26.

¶8 In this case, the District Court apportioned and made detailed findings of fact regarding each asset in the marital estate. It determined the value of each asset when it was purchased; it determined the value of the asset at the time of the marriage, unless the

4

asset was purchased during the marriage; it determined whether and how each asset was encumbered by liabilities before and during the marriage; it determined whether and how each asset appreciated or depreciated during the marriage; it determined the portion of each asset's value that was attributable to the marriage or to either party alone; and it made specific factual findings in support of each of these determinations. Based on these findings, the net value of each asset before, at the time of, and following dissolution is clear from the District Court's order. The findings of fact are sufficient, therefore, to determine the net worth of the estate and to determine whether the estate was apportioned equitably. *See In re Fenzau*, 2002 MT 197, ¶¶ 39-40, 311 Mont. 163, 54 P.3d 43. The District Court did not err simply by failing to state the net worth of the estate in a specific factual finding.

¶9 For similar reasons, the District Court did not err by incorrectly stating the net worth of the estate or the parties' shares of the net worth in the Property Distribution Schedule. As Delynn notes, the District Court made a number of clerical errors in reporting the monetary value of each spouse's share of particular assets and in stating the total value of the estate in the Property Distribution Schedule, which was an appendix to its order. For example, the District Court stated that a particular marital asset was worth $80,010. It said that the asset should be split evenly between the parties, awarding $40,050 to each of them. This was an error since half of $80,010 is, of course, $40,005 and not $40,050. Additionally, the District Court attributed the value of a single asset to Delynn twice when reporting in the Property Distribution Schedule Delynn's total share of the marital estate. It did not make this same mistake in its order.

5

¶10    These errors are not dispositive. They are merely slight computational errors. They are not serious enough to indicate that the apportionment was inequitable or that the District Court ordered an apportionment that it did not intend. Just as a District Court is not required to make a specific finding of net worth, we cannot say that an erroneous statement of net worth or other minor computational errors require reversal. Despite the court's computational errors, the District Court's findings continue to present a sufficient basis for us to determine the net worth of the estate and to consider whether the apportionment was equitable.

¶11    *2. Did the District Court err by awarding Tracy certain pre-marital and post-separation property?*

¶12    Delynn contends that the District Court entirely excluded Delynn from sharing in the premarital value of their "Lake House," Tracy's premarital contributions to a retirement account, and Tracy's post-separation contributions to another retirement account. She argues that the District Court abused its discretion by doing so because it did not make specific factual findings to support this treatment. We disagree.

¶13    In dissolution proceedings, district courts are required by § 40-4-202(1), MCA, to equitably apportion "*everything* owned jointly or by either party . . . regardless of when or how it was acquired." *In re Marriage of Funk*, 2012 MT 14, ¶ 13, 363 Mont. 352, 270 P.3d 39 (emphasis in original). When apportioning pre-acquired, gifted, and inherited property, the court must also "consider those contributions of the [non-acquiring or non-recipient] spouse to the marriage, including: (a) the nonmonetary contribution of a homemaker; (b) the extent to which the contributions have facilitated maintenance of the

6

property; and (c) whether or not the property division serves as an alternative to maintenance arrangements." Section 40-4-202(1), MCA; *accord Funk*, ¶ 14.

¶14 This does not mean, as Delynn seems to suggest, that the District Court was required to consider each factor for each asset individually or to make corresponding findings of fact. Instead, "[t]he court's decision must reflect that each of these factors was considered" and, as discussed above, it must "consider the assets and liabilities of each of the parties and . . . enter property-specific findings of fact." *Funk*, ¶ 34.

¶15 Here, in conducting its analysis, the District Court adequately considered all of the relevant facts and all of the factors required by § 40-4-202(1), MCA. With regard to factor (a), the District Court made extensive findings of fact regarding Delynn's education, legal career, and work as a homemaker and mother. It also discussed how she sacrificed her health to make some of these contributions and how, in turn, her health has affected her ability to contribute monetarily to the marriage. Addressing factor (b), it then stated whether and to what extent Delynn contributed to the maintenance and increased value of each pre-acquired, gifted, or inherited asset. Ultimately, the Court decided to apportion to each party the value of his or her pre-acquired assets. This included the pre-marriage value of the Lake House along with its pre-marriage mortgage, which it apportioned to Tracy. This also included the pre-marriage value of a retirement account Delynn opened before the marriage, which it apportioned to Delynn. Based upon the apportionment of the property, the District Court decided, with regard to factor (c), that "Delynn does not lack sufficient property to provide for her reasonable needs, and

7

that therefore an award of maintenance is not appropriate." The District Court's order reflects that each of the factors of § 40-4-202(1), MCA, were considered.

¶16 Delynn does not argue that apportionment of the estate was actually inequitable. She limits her arguments to the District Court's analysis of the § 40-4-202(1), MCA, factors. We, therefore, limit our analysis to the same issue. We conclude that the District Court did not abuse its discretion, because it considered the statutory factors before apportioning pre-acquired assets.

¶17 *3. Did the District Court abuse its discretion by refusing to award maintenance in favor of Delynn?*

¶18 The District Court concluded that "Delynn does not lack sufficient property to provide for her reasonable needs," and it refused to award her maintenance. Delynn does not contend that this conclusion or any of the multiple findings upon which it was based are clearly erroneous. Instead, Delynn contends that this was not a sufficient basis for the District Court's decision not to award maintenance. She argues that the District Court abused its discretion by failing to consider other factors. We disagree.

¶19 Generally, maintenance is not favored. It is only appropriate when a spouse has insufficient assets to cover living expenses and cannot reasonably earn a sufficient amount to maintain an appropriate standard of living. Section 40-4-203(1), MCA; *Crilly*, ¶ 10. Here, the District Court found that "Delynn is currently underemployed and capable of earning an income as a self-employed attorney"; that her reasonable and necessary expenses totaled $34,572 per year, while she was reasonably capable of earning $34,520 per year; and, ultimately, that "Delynn does not lack sufficient property

8

to provide for her reasonable needs." This finding is premised in part on the court's award to Delynn of over 55% of the marital estate, which had a value in excess of $800,000. Based on these findings, Delynn did not meet the requirements of § 40-4-203(1), MCA, and the District Court, therefore, did not abuse its discretion in denying maintenance in this case.

¶20 *4. Did the District Court err by retroactively modifying Tracy's obligations under the Interim Support Agreement?*

¶21 Delynn contends that Tracy was bound by the terms of the ISA to pay $5,000 per month to her in support. She contends that by the terms of the ISA, this payment was to continue until the parties agreed otherwise or until the District Court entered an order terminating the obligation. She argues that the District Court erred by terminating Tracy's obligation retroactively to a date before its order was entered. Tracy, meanwhile, argues that the plain language of the agreement allowed the District Court to modify the obligation retroactively.[1]

¶22 To support their arguments, each party presents a different interpretation of the agreement language. However, we do not need to resolve these differing interpretations. Even if Delynn is correct and the District Court was not authorized to modify Tracy's temporary support obligations, Delynn acquiesced to such an error before the District Court. In arguing whether the District Court should adopt the ISA or require Tracy to

---

[1] This Court has never considered whether the parties to a dissolution can limit by agreement the power of a court to order, to modify, or to retroactively modify temporary support obligations of either party. In their arguments to this Court, the parties assume that their agreement was binding upon the District Court. We do not consider whether this is so, because the parties do not address this question and because resolution of that question is not important to our present analysis.

continue to pay temporary maintenance, both parties focused on whether the obligation *should* be modified. They did not argue whether it *could* be modified, and both parties seemed to agree that it was within the District Court's discretion to modify the agreement. Indeed, Delynn stated that "the terms of the Interim Support Agreement may not be modified unless and until the parties enter into a formal agreement to do so, or there is an Order of the Court providing for such modification." Also neither party, in discussing the matter at trial, disputed that modification was within the court's discretion.

¶23 As we have often said, "we will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which the appellant made no objection." *In re Marriage of Anderson*, 2013 MT 238, ¶ 28, 371 Mont. 321, 307 P.3d 313. Delynn acquiesced to the error that she now asserts. Though she argued that it should not do so in light of Tracy's circumstances, Delynn plainly agreed that the District Court had the discretion to modify their agreement and Tracy's support obligations. Exercising the discretion that both parties agreed it had, the District Court relieved Tracy of his support obligation as of the date that trial began. Delynn cannot now argue, contrary to her position at trial, that the District Court did not have the discretion to make this decision.

¶24 *5. Was the District Court's child support order clearly erroneous or an abuse of discretion?*

¶25 Delynn claims that the District Court failed to make sufficient findings in support of its child support order, that the order conflicted with some of the findings of fact the District Court did make, and that several of the figures on which the order was based

10

were not supported in the record. She argues, therefore, that the order should be reversed and recalculated. We disagree.

¶26 "A district court is required to make specific findings in writing to explain its calculation of child support and any deviation from the [Child Support Guidelines]." *In re Marriage of Stufft*, 286 Mont. 239, 250, 950 P.2d 1373, 1379 (1997); *accord In re Marriage of Mills*, 2006 MT 149, ¶ 18, 332 Mont. 415, 138 P.3d 815. It is not required, as Delynn suggests, to make specific findings of fact on every element of every amount underlying the child support calculation. *Mills*, ¶ 20. Instead, it must set forth "the essential and determining facts underlying its decision," so that this Court is able to determine the reasons why the District Court used the amounts it did. *See Mills*, ¶ 20.

¶27 In this case, each of the parties retained experts to calculate child support. Each expert calculated child support based upon the child support guidelines. Their calculations differed, however, based on the income they imputed to Delynn. As Delynn did not have a history of income on which to base child support, the parties and experts were left to estimate what Delynn's income would be. Delynn's expert suggested that $24,427 should be imputed to Delynn. He calculated this by assuming Delynn, as an attorney, could make $18.79 per hour and work 25 hours per week. Based on this amount, he calculated Tracy's support obligation to be $4,735 per month.

¶28 On the other hand, Tracy's expert provided three different calculations, each of which differed in the amount of income imputed to Delynn. The District Court ultimately adopted the calculation that imputed the lowest income to Delynn. In this calculation, Tracy's expert imputed $33,750 per year to Delynn. This was based on the

starting salary at the Flathead County Attorney's Office, the last position Delynn held before committing to be a full-time mother, reduced by the percent of the work week that Delynn could work given her health. The calculation also credited Tracy with tuition payments and miles driven to exercise long-distance parenting. Based on these amounts, Tracy's expert calculated Tracy's support obligation to be $2,225 per month.

¶29 The calculation, as Delynn notes, does not conform to one of the District Court's findings of fact. In particular, the District Court found that "Delynn is capable of earning a net income of $34,520 per year." While this was not the amount the District Court ultimately imputed to Delynn for the purpose of calculating child support, we do not hold that the District Court's child support award was inconsistent with this factual finding, that the award was based on a mistake, or that the award was otherwise clearly erroneous or an abuse of discretion.

¶30 The District Court knew and specifically acknowledged that the calculation it adopted was based on an imputed income of $33,750. It did not adopt the calculation or imputed income upon which it relied mistakenly or inadvertently. Instead, it did so after weighing the conflicting testimony of the parties' experts and after significant flaws were identified in the calculations of Delynn's expert.

¶31 The calculation was supported by substantial evidence in the record. Tracy's expert provided extensive testimony about what the calculation means, how he estimated Delynn's imputed income, and from what evidence he found support for particular figures. For example, the tuition payment credited to Tracy was based upon a tuition bill,

12

which was entered as an exhibit into the record. The mileage credit was based on Tracy's testimony, the parties' parenting plan, and the distance between the parties' residences.

¶32 The $33,750 imputed income was not inconsistent with or unreasonable in light of the District Court's finding that Delynn was "capable" of earning $34,520. While the District Court decided that Delynn was capable of earning the latter amount, it did not decide that this is what she would reasonably make in a year or that it was an appropriate amount upon which to base child support. Instead, it relied on the testimony of Tracy's expert. Moreover, while the District Court used the $34,520 income in determining whether to award maintenance, we cannot say that using a different amount in its child support calculation was an abuse of discretion. The difference in the amounts is small and each amount is supported by substantial evidence in the record. We also cannot say that use of different amounts in each calculation is *necessarily* unreasonable or an abuse of discretion.

¶33 The District Court did not abuse its discretion by estimating Delynn's income differently for maintenance than for child support. Both amounts were supported by substantial evidence and were not significantly different, and the District Court's findings of fact were sufficient to support the child support award. For these reasons, we hold that there was neither a clearly erroneous finding of fact nor an abuse of discretion warranting reversal of the child support order.

**CONCLUSION**

¶34 The District Court's order was based upon substantial evidence, and it considered the statutorily required factors in reaching its decisions regarding equitable

13

apportionment of the marital estate, maintenance, and child support.  It did not abuse its

discretion by making these decisions.  Affirmed.


/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

14