FILED

September 1 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0731

DA 14-0731

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 256

DEBORA M. SMITH,

        Petitioner and Appellee,

  v.

GLENN E. SMITH,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR-11-69
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            P. Mars Scott, P. Mars Scott Law Offices; Missoula, Montana

        For Appellee:

            Brian M. Lebsock, Datsopoulos, MacDonald & Lind, P.C.; Missoula, Montana

Submitted on Briefs:  June 24, 2015
Decided:  September 1, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Glenn Smith (Glenn) appeals from a dissolution decree entered by the Twentieth Judicial District Court, Lake County, dissolving his marriage to Debora Smith (Debora) and distributing their marital estate. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶2 We address the following issues on appeal:

*1. Did the District Court abuse its discretion by ordering the division of Glenn's social security benefits?*

*2. Did the District Court abuse its discretion in awarding maintenance to Debora?*

*3. Did the District Court abuse its discretion by imposing conditions on the termination of maintenance?*

*4. Did the District Court abuse its discretion in awarding an equalization payment?*

*5. Did the District Court abuse its discretion by awarding Debora a 2006 SeaDoo watercraft vehicle?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Glenn and Debora live in Polson. They were married on April 12, 1978 and separated in 2010. Two children were born of the marriage, both of whom are adults. Debora is 62 and Glenn is 69. Debora filed a petition for dissolution of her marriage in Flathead County on April 18, 2011.

¶4 During most of the marriage, Debora was a homemaker, taking primary responsibility for rearing the parties' two children and maintaining the marital home. Debora is currently unemployed, but is eligible to receive social security benefits of

2

$1,500 per month.[1] Glenn is employed with the Confederated Salish and Kootenai Tribes as an investment manager, earning $175,000 annually. Glenn also receives $28,000 per year in social security benefits. Debora and Glenn have both been diagnosed with post-traumatic stress disorder. Glenn has several other health issues, including heart problems, asthma, anxiety disorder, and sleep apnea. Glenn has been advised by medical professionals to retire.

¶5 Glenn resides on Kings Point Road in Polson. The Kings Point property is located on tribal land. Glenn is an enrolled member of the Confederated Salish and Kootenai Tribes. Debora is not a tribal member. Glenn purchased the Kings Point property with funds he obtained by mortgaging property in Washington State that Debora's family friends, the Fredricksons, had transferred to him. Glenn encumbered the property in the amount of $198,000 and used $150,000 of those proceeds to purchase the Kings Point property. He thereafter sold the Frederickson property.

¶6 Debora resides in the parties' marital home located on Flathead Lake, which the parties refer to as the Lake House. The Lake House has a market value of $595,000, but is encumbered with a mortgage of $536,982. The parties also own a parcel of property on Schaefer Road outside of Polson, and a lot in Hungry Horse. The Schaefer Road property has a market value of $90,000 and is encumbered with debt in the amount of $75,000. The Hungry Horse property is unencumbered and has a market value of

---

[1] Debora contends on appeal that her social security benefits are closer to $850 per month, but introduced no evidence at trial to that effect.

$15,000. In addition to real property, the parties' personal property includes a 2006 SeaDoo watercraft vehicle and a Great West Retirement account valued at $251,544.

¶7 After a two-day trial, the District Court entered findings of fact, conclusions of law, and an order dissolving the parties' marriage and distributing their marital estate. The court made detailed findings and issued specific instructions regarding each item of real and personal property. It adopted Glenn's valuation of the parties' assets and attached to its order Glenn's spreadsheets that itemized the assets. The court ordered the immediate sale of the Lake House, Hungry Horse property, and Schaefer property, and divided the net proceeds equally; ordered the Great West Retirement account to be divided equally; ordered the parties' social security benefits to be divided equally; awarded Debora the 2006 SeaDoo; and awarded Debora an equalization payment in the amount of $164,500. The court concluded it lacked jurisdiction to divide or transfer the Kings Point property and did not consider the property a marital asset. However, the court found that the proceeds from the Fredrickson property and $16,000 used for improvements on the Kings Point property were marital funds that were unilaterally taken by Glenn beyond the court's jurisdiction or otherwise concealed. Consequently, the court considered the Fredrickson property proceeds and these improvements to the Kings Point property to be marital property in determining the equalization payment.

¶8 The District Court ordered Glenn to pay $2,500 per month to Debora in maintenance. In support of the maintenance award, the court found that Glenn's claimed monthly expenses of $11,500 were inflated by monthly payments associated with the Lake House and his living expenses were actually $7,600. Reasoning that Debora was

4

entitled to live a similar lifestyle, the court determined her living expenses to be the same as Glenn's. The court ordered that the maintenance payments would cease if Debora remarries or cohabits with another adult who is not her relative, or if both of the following occur: "a) Glenn ceases to be gainfully employed; and b) Glenn ceases to receive income from investments (not counting retirement account income)."

¶9 Glenn appeals.

## STANDARD OF REVIEW

¶10 We review a district court's distribution of marital property to determine whether the court's findings of fact are clearly erroneous. *In re Williams*, 2009 MT 282, ¶ 14, 352 Mont. 198, 217 P.3d 67. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Bock v. Smith*, 2005 MT 40, ¶ 14, 326 Mont. 123, 107 P.3d 488. Absent clearly erroneous findings, we will affirm the district court unless we identify an abuse of discretion. *Bock*, ¶ 14. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, 124 P.3d 1151. We review a district court's conclusions of law to determine whether those conclusions are correct. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72.

**DISCUSSION**

¶11    *1. Did the District Court abuse its discretion by ordering the division of Glenn's social security benefits?*

¶12    Glenn argues and Debora concedes that the District Court erred by ordering the distribution of Glenn's social security benefits as part of the equitable distribution of the marital property. The parties agree that, under 42 U.S.C. § 407(a) of the Social Security Act, 42 U.S.C. § 401 et seq., the transfer or assignment of social security benefits is forbidden, and, because § 407(a) preempts state law, the benefits cannot be directly divided in a dissolution proceeding.

¶13    42 U.S.C. § 407(a) provides that social security benefits "shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." In *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S. Ct. 590, 592 (1973), the United States Supreme Court stated that 42 U.S.C. § 407(a) "imposes a broad bar against the use of any legal process to reach all social security benefits." Therefore, we conclude the District Court erred in ordering the distribution of a portion of Glenn's social security benefits to Debora. However, that does not end our inquiry.

¶14    While Debora concedes Glenn's social security benefits may not be directly distributed, she argues that this Court must order the District Court to offset, with other marital property of the same value, the amount she was to receive had the benefits been able to be distributed. Glenn counters that such indirect allocation is likewise

6

impermissible, arguing the "weight of authority has concluded that an offset of Social Security benefits is prohibited," and this "Court's decision in *In re Marriage of Strong*, 2000 MT 178, 300 Mont. 331, 8 P.3d 763, strongly supports adoption of the majority approach prohibiting offset."

¶15     The issue of whether a state court may offset social security benefits by ordering the distribution of other property of equal value when devising an equitable apportionment of marital property in a dissolution proceeding is a question of first impression for this Court. The United States Supreme Court's decision in *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802 (1979), and this Court's decision in *Strong*, provide guidance. In *Hisquierdo*, the United States Supreme Court addressed the issue of offset, albeit under the Railroad Retirement Act, 45 U.S.C. § 231 et seq. *Hisquierdo*, 439 U.S. at 588, 99 S. Ct. at 811. After holding that a direct distribution of a husband's railroad retirement benefits violated the nonalienation provisions of the Act, the Court considered the wife's alternative argument that the state court could vindicate her interests in the railroad retirement benefits by ordering an offsetting award of marital property. *Hisquierdo*, 439 U.S. at 588, 99 S. Ct. at 811. The Court rejected the argument, concluding that using other property to balance or offset one spouse's expected railroad retirement benefits was tantamount to directly dividing those benefits in violation of the Act. *Hisquierdo*, 439 U.S. at 588-90, 99 S. Ct. at 812. The Court explained that an offsetting award "would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo*, 439 U.S. at 588, 99 S. Ct. at 811. In reaching its decision, the Court noted similarities

7

between the Railroad Retirement Act and the Social Security Act, including that both prohibited the assignment of benefits through garnishment or other legal process, and analogized the provisions of the two Acts throughout its opinion. *Hisquierdo*, 439 U.S. at 574-76, 99 S. Ct. at 805-06.

¶16 Almost uniformly, state courts have applied the principles from *Hisquierdo* to conclude that social security benefits may not be a basis for an offsetting award in state dissolution proceedings. *Stanley v. Stanley*, 956 A.2d 1 (Del. 2008); *Johnson v. Johnson*, 2007 SD 56, 734 N.W.2d 801 (S.D. 2007); *In re Marriage of Crook*, 211 Ill. 2d 437, 813 N.E.2d 198 (Ill. 2004); *Johnson v. Johnson*, 726 So. 2d 393 (Fla. App. 1999); *In re Marriage of James*, 950 P.2d 624 (Colo. App. 1997); *Marriage of Zahm*, 138 Wn. 2d 213, 978 P.2d 498 (Wash. 1999); *Reymann v. Reymann*, 919 S.W.2d 615 (Tenn. App. 1995); *In re Marriage of Boyer*, 538 N.W.2d 293 (Iowa 1995*); Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989). Like 45 U.S.C. § 231m of the Railroad Retirement Act, 42 U.S.C. § 407(a) of the Social Security Act prohibits the assignment of retirement benefits and removes the benefits from the reach of "garnishment, attachment, or other legal process under any circumstances whatsoever . . . ." Because virtually identical language appears in both statutes, and as we observe no other controlling differences between the Social Security Act and the Railroad Retirement Act, we are compelled to apply the reasoning announced in *Hisquierdo*. We join the majority of state courts that have considered this question and conclude that § 407(a) prohibits an offsetting award.

¶17 This Court's decision in *Strong* provides additional support for our conclusion, but also offers guidance regarding the permissible role social security benefits may play in

8

the distribution of a marital estate. In *Strong*, we considered whether a state trial court may include Veterans' Administration (VA) disability benefits in a marital estate and award those benefits as part of an equitable division of the marital property. *Strong*, ¶ 11. We held that, under the provisions of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 et seq., and 38 U.S.C. § 5301(a), Congress had preempted state courts from including VA disability benefits in a marital estate. *Strong*, ¶ 27. We also deemed it appropriate, for the purpose of providing guidance on remand, to "address what authority the courts of Montana ha[d] over VA disability benefits without running afoul of the Supremacy Clause." *Strong*, ¶ 28. We first concluded it would be improper for a trial court to use the value of the military disability benefits as a basis for awarding offsetting marital property to the other spouse, explaining that the "[d]isability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage." *Strong*, ¶ 35 (quotation omitted). However, we further concluded it was permissible for the trial court to consider the benefits more "generally as an economic circumstance of the parties," *Strong*, ¶ 40, in the same way a court "considers each party's ability to earn income post-dissolution as an important factor in achieving an equitable property division, thus avoiding the need to award spousal maintenance." *Strong*, ¶ 34 (internal citation omitted). We "caution[ed] trial courts to be careful not to achieve indirectly what they may not do directly." *Strong*, ¶ 35.

¶18 The majority of state courts utilize a similar approach with respect to social security benefits. Although these courts prohibit offset, they allow a "general

consideration of a party's anticipated social security benefits in the overall scheme when making a property division." *Johnson*, 2007 SD 56, ¶ 25 (citing *Webster v. Webster*, 716 N.W.2d 47, 55, 271 Neb. 788, 798 (Neb. 2006)); *see also In re Marriage of Morehouse*, 121 P.3d 264 (Col. App. 2005); *In re Marriage of Brane*, 21 Kan. App. 2d 778, 908 P.2d 625 (Kan. App. 1995); *Bradbury v. Bradbury*, 2006 ME 26, 893 A.2d 607 (Me. 2006); *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852 (Mass. 1997); *Rudden v. Rudden*, 765 S.W.2d 719 (Mo. App. 1989); *Neville v. Neville*, 791 N.E.2d 434, 437 (Ohio 2003); *Zahm*, 138 Wn. 2d 213; *In re Marriage of Boyer*, 538 N.W.2d at 296 ("We see a crucial distinction between: (1) adjusting property division so as to indirectly allow invasion of benefits; and (2) making a general adjustment in dividing marital property on the basis that one party, far more than the other, can reasonably expect to enjoy a secure retirement.").

¶19    Based upon our decision in *Strong* and the pervasive practice in other jurisdictions, we adopt the rule that social security benefits may be considered as a factor, among others, when dividing marital property.  By not allowing a district court to divide the benefits in substance or form, this approach adheres to federal law, and, at the same time, advances the policy underpinning state law by promoting equitable apportionment. We remain aware, as we stated in *Strong*, of the possibility that our holding may tempt lower courts to simply shift property of equivalent value to the spouse not receiving the benefit as an offset.  We again caution courts that this practice is unacceptable.  A court may not treat social security benefits as the equivalent to marital property.  Instead, in arriving at an equitable distribution of the parties' estate, a court may consider social

10

security benefits generally in determining the economic circumstances of the parties. We thus reverse the District Court's distribution of the marital estate and remand for further consideration.

¶20 *2. Did the District Court abuse its discretion in awarding maintenance to Debora?*

¶21 Glenn argues the District Court abused its discretion by failing to adequately address Debora's financial resources and Glenn's ability to meet his own needs prior to the sale of the Lake House, on which he was making a substantial payment. Section 40-4-203(1), MCA, provides that a court may award maintenance only if it finds that the spouse seeking maintenance: "(a) lacks sufficient property to provide for the spouse's reasonable needs; and (b) is unable to be self-supporting through appropriate employment . . . ." Section 40-4-203(2), MCA, states that the award must be in amounts and for periods of time that the court considers just, and only after considering all relevant facts, including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to that party, and the party's ability to meet the party's needs independently . . . ;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

11

(f) the ability of the spouse from whom maintenance is sought to meet the spouse's own needs while meeting those of the spouse seeking maintenance.

¶22 We agree with Glenn that the District Court erred in determining the maintenance award. The court made no findings of fact to support its determination that Debora's monthly expenses were $7,600. The court merely stated that Debora's expenses should be the same as Glenn's expenses without any expressed factual basis to support this determination. *See Crowley v. Crowley*, 2014 MT 42, ¶ 42, 374 Mont. 48, 318 P.3d 1031 ("We are unable to determine from the District Court's brief findings whether the court properly awarded maintenance under the relevant factors listed in § 40-4-203(2), MCA, as its findings did not address these factors specifically."). Further, the court's failure to recognize Glenn's monthly expenses associated with the Lake House, at least until the house is sold, was clearly erroneous. Until then, these costs are properly included within Glenn's expenses and must be considered in determining Glenn's ability to "meet the spouse's own needs while meeting those of the spouse seeking maintenance." Section 40-4-203(2)(f), MCA. We reverse and remand the maintenance issue for further consideration.

¶23 *3. Did the District Court abuse its discretion by imposing conditions on the termination of the maintenance?*

¶24 Glenn contends the District Court erred as a matter of law by ordering that maintenance would terminate when Glenn both ceases to be "gainfully employed" and ceases to receive income from investments, except for retirement accounts. Citing § 40-4-208(2)(b)(i), MCA, Glenn argues that "modification or termination of spousal

maintenance 'may <u>only</u> be made' under certain conditions, including in pertinent part 'a showing of change of circumstances so substantial and continuing as to make the terms unconscionable.'" (underlining in original). Because we are remanding the maintenance issue for further consideration, we address this issue to provide instruction on remand.

¶25 Section 40-4-208(1), MCA, provides: "a *decree may be modified by a court* as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification." (Emphasis added.) Section 40-4-208(2)(b)(i), MCA, further provides that a decree can only be modified in regard to maintenance "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

¶26 Glenn's argument mistakenly applies § 40-4-208, MCA, to the District Court's conditions for termination of maintenance. This provision governs a court's modification of an earlier dissolution decree, including the modification of a maintenance award, which did not occur here. The court simply set conditions that would trigger the termination of the maintenance it had decreed. Glenn would be free at a later time to petition for modification of any maintenance award pursuant to § 40-4-208(b), MCA, at which time he must satisfy the statute's requirements, including that he make "a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(b)(i), MCA. However, the District Court's award of maintenance does not conflict with this statute.

¶27 Glenn also argues that the District Court's maintenance conditions are impermissibly vague. He offers that the term "gainfully employed," as used in the

13

court's order, could include a minimum-wage position that would be unable to support a large maintenance payment. Although this Court favors "providing the person obligated to pay maintenance as much certainty as possible regarding the amount and duration of the obligation," *In re Marriage of Zander*, 262 Mont. 215, 225, 864 P.2d 1225, 1231 (1993), we conclude there is nothing impermissibly vague or uncertain about the term "gainfully employed" as used in the court's order. A change in Glenn's economic circumstances may well subject the maintenance award to modification or termination, especially if those changes are significant. In that event, Glenn would be free, as discussed above, to petition the court pursuant to § 40-4-208, MCA, for modification of the award. We conclude the District Court's conditions for termination of the maintenance award are legally permissible.[2]

¶28    *4. Did the District Court abuse its discretion in awarding an equalization payment?*

¶29    Section 40-4-202(1), MCA, governs a district court's division of property in a marital dissolution, stating that a district court shall "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title . . . is in the name of the husband or wife or both." A district court's apportionment of the marital estate "should be equitable in light of the net worth of the estate." *In re Marriage of Axelberg*, 2015 MT 110, ¶ 7, 378 Mont. 528, 347 P.3d 1225. A district court exceeds its authority under § 40-4-202, MCA, when it awards

---

[2] Glenn makes additional arguments regarding the propriety of an award of maintenance here. Because we have reversed and remanded the award of maintenance for further consideration, we do not address those arguments.

14

cash or property that is in excess of the proven net worth of the estate. *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535.

¶30 Glenn first argues that the equalization payment exceeds the net worth of the estate. However, by Glenn's own calculations, the net worth of the estate is greater than the amount of the equalization payment. The District Court adopted Glenn's estimated value of the parties' assets and in view of the net value of merely the chief assets—the Fredrickson property proceeds ($198,000), Lake House ($58,018), Hungry Horse lot ($15,000), Schaffer Road property ($15,000), and the Great West Retirement account ($251,494)—the parties' net worth surpasses $537,500, far exceeding the equalization payment of $164,500. Thus, the District Court did not award more than the net value of the existing marital estate.

¶31 Glenn also argues that because "the Fredrickson property was a gift to Glenn," the "proceeds should not be taken into account in determining the value of the marital estate." However, the fact the Fredrickson property was gifted to Glenn does not alter the property's status as marital property subject to equitable apportionment. We have held that, in a dissolution proceeding, a district court must equitably apportion "*everything* owned jointly or by either party . . . regardless of when or how it was acquired." *In re Marriage of Funk*, 2012 MT 14, ¶ 13, 363 Mont. 352, 270 P.3d 39.[3]

---

[3] The District Court rejected Glenn's position that the Fredrickson house should be excluded from the marital estate as gifted or inherited property, noting that "[t]his is not 'gift' or 'inheritance' in any usual sense. Debora alleges Glenn's conduct was nefarious and dishonest. This Court lacks sufficient evidence to determine that, but finds the asset was gained through Glenn's 'services' and therefore an earned marital asset, whether acquired rightly or wrongly."

15

¶32 Lastly, Glenn argues that even if the Frederickson property proceeds were properly included within the estate, "only $150,000 of these proceeds are traceable to the Kings Point property," and the "remaining $45,000 is not accounted for at all and therefore should not be credited to Glenn." He adds that the "improvements Glenn made to the Kings Point property similarly should be disregarded in calculating the equalization payment." The District Court found that the $198,000 in Fredrickson property proceeds and the $16,000 of improvements to the Kings Point property were unilaterally taken by Glenn beyond the court's jurisdiction or were otherwise concealed. Because we see, after review of the record, no error in these findings, we conclude that the entire amount of the Fredrickson property proceeds and the identified sums expended for improvements to the Kings Point property were properly included in the marital estate.

¶33 While the ultimate distribution of the estate and calculation of an equalization payment may be altered on remand, we have provided resolution of the issues argued herein for guidance on remand.

¶34 *5. Did the District Court abuse its discretion by awarding Debora a 2006 SeaDoo watercraft vehicle?*

¶35 Glenn argues "[t]here was no evidence, let alone substantial evidence, to warrant the award of the SeaDoo to Debora." However, Debora testified she enjoyed riding the SeaDoo with her daughter and wished to have the watercraft vehicle. The District Court did not abuse its discretion in awarding the 2006 SeaDoo watercraft vehicle to Debora.

16

**CONCLUSION**

¶36 We reverse the District Court's distribution of the parties' social security benefits and remand the distribution of the marital estate for further consideration consistent with the analysis herein. We also reverse the maintenance award and remand for entry of sufficient findings concerning Debora's financial expenses, and for consideration of Glenn's expenses associated with the Lake House in determining Glenn's ability to make maintenance payments and meet his own needs during the pendency of the sale of the Lake House. Because questions of equitable distribution and spousal maintenance are intertwined, the District Court may reconsider these issues and the calculation of the equalization payment to the extent necessary, in its discretion, to enter a revised decree. In all other respects, we conclude that the District Court did not err.

¶37 Affirmed in part, reversed in part, and remanded to the District Court for further proceedings in accordance herewith.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT