FILED

10/15/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0659

DA 23-0659

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 229

IN RE THE MARRIAGE OF:

LOUISE SCHAUB,

> Petitioner and Appellee,

and

DENNIS SCHAUB,

> Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twelfth Judicial District, In and For the County of Hill, Cause No. DR-18-038 Honorable Kaydee Snipes Ruiz, Presiding Judge |

COUNSEL OF RECORD:

> For Appellant:
>
> > Jeremy S. Yellin, Attorney at Law, Havre, Montana
>
> For Appellee:
>
> > Patrick F. Flaherty, Flaherty Gallardo Lawyers, Great Falls, Montana

Submitted on Briefs: July 10, 2024

Decided: October 15, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Dennis Schaub (Dennis) appeals the November 1, 2023 Findings of Fact, Conclusions of Law, and Dissolution Order entered by the Twelfth Judicial District, Hill County. Louise Schaub (Louise) cross appeals the Order. Both parties challenge the District Court's distribution of marital assets. We affirm in part, and reverse in part and remand for amendment of the Final Decree of Dissolution consistent with this Opinion.

¶2 We restate the issues on appeal as follows:

1. *Whether the District Court's Order equitably divided the marital estate.*

2. *Whether interest should be paid on the award to Louise.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Dennis and Louise married in 1980 and divorced in 2010. When the couple divorced in 2010, they stipulated to a property settlement agreement that divided their assets. Dennis's counsel drafted the agreement. Louise was not represented by counsel at the time. Both Dennis and Louise signed the agreement which gave Dennis seven real properties, as well as multiple vehicles, trailers, a boat, a four-wheeler, and all other property located in the marital home. Louise received a 1993 Voyager van, a bed, couch, loveseat, chair, personal clothing, and all personal items in her possession.

¶4 They reunited in 2014 for approximately two and a half years. During their reunification, they established a common law marriage. They separated again in 2017. On June 8, 2018, after the second separation, Louise filed a petition for dissolution of marriage. The District Court sanctioned Louise for discovery violations and awarded Dennis his bank accounts, all real property, multiple vehicles, boats, quad runners, firearms, trailers, and

2

motorcycles, as well as various other valuable personal property. Louise received all her personal property. The District Court cited the short period of reconciliation, Dennis's role as sole wage earner, and Louise's failure to contribute to the marital estate as justification for awarding almost the entirety of the marital estate to Dennis.

¶5 Louise appealed the District Court's decision. This Court reviewed the appeal and remanded to the District Court. *In re Marriage of Schaub*, 2021 MT 216N, ¶ 2, 405 Mont. 538, 493 P.3d 1005. This Court stated:

> The court provided scant justification for this grossly lopsided division and did not cite or discuss the factors from § 40-4-202, MCA. The District Court failed to consider the prior thirty-year marriage between the couple, with a relatively short break before reconciling and remarrying. The District Court failed to consider the unique circumstances of this case, including the fact an unrepresented Louise stipulated to the 2010 property settlement agreement, but she no longer does. The prior property settlement agreement, while relevant to consider, does not serve as a de facto prenuptial agreement in the current proceedings. The court remains obligated to equitably divide the property in the current dissolution proceedings, considering all the factors under § 40-4-202, MCA.

*Marriage of Schaub*, ¶ 12. Further, we concluded "the District Court's findings of fact underlying the distribution of the marital estate are clearly erroneous because they are not based on substantial evidence in the record." *Marriage of Schaub*, ¶ 13. As such, we remanded to the District Court to reconsider an equitable distribution of the marital estate.

¶6 On remand, the District Court held a hearing on July 11, 2023, to hear evidence and testimony regarding the couple's assets. Dennis testified about the various rental properties he owned and that they generated approximately $3,000 per month in rental income. He also testified about his vehicles and personal property including firearms and a tractor. Dennis also testified that he thought the District Court's original distribution of assets was

3

fair because he believed Louise wasted her portion of the marital estate by purchasing prescription drugs and funding her treatments.

¶7 Louise testified that she provided extensive medical care to Dennis because of his back and neck injuries both during their 30-year marriage and their brief reconciliation period. Louise stated she worked at a day care, head start program, and an IGA during their 30-year marriage, but she did not work during their reconciliation. Louise stated she did not receive any of Dennis's rental income during their reconciliation. Louise also testified that at times throughout the marriage she obtained marital funds by writing checks for groceries for greater than the amount she spent so that she could use the leftover money to purchase drugs. Louise also admitted that at times throughout the marriage she inappropriately took her husband's prescription medication and replaced it with over-the-counter medication, and also at times put pills in his coffee so that she could use drugs while at home without him knowing about it.

¶8 Dennis and Louise's daughters also testified, both relating various times Louise admitted dissipation of marital assets and using funds from the upholstery business to support her drug use.

¶9 After the hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Order on December 12, 2023. The court did not rely on the 2010 property settlement agreement, noting it was relevant to consider, but did not serve as a de facto prenuptial agreement. The court also stated it considered the factors in § 40-4-202, MCA. The court dissolved the marriage and ordered Dennis to pay equalization payments to Louise. The court noted "[t]he assets of the parties and the division of the real property remains

4

lopsided," so to equalize the estate, Dennis must pay monthly equalization payments pursuant to a detailed schedule over the next fifteen years for a total of $242,400. The court figured Dennis's total assets less liabilities to be $569,341.08 and Louise's estate to be $0. Thus, the equalization payments were meant to equitably distribute the marital estate—with Louise receiving approximately 42% and Dennis receiving 58% of the marital estate. The court did not require Dennis to pay interest on the payments.

¶10 Dennis and Louise appeal.

## STANDARD OF REVIEW

¶11 We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Hutchins v. Hutchins*, 2018 MT 275, ¶ 7, 393 Mont. 283, 430 P.3d 502. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that the court committed a mistake. *Hutchins*, ¶ 7. "A district court's apportionment of the marital estate will stand unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Hutchins*, ¶ 7 (citing *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126). Each case is considered individually based on its own unique circumstances. *Hutchins*, ¶ 7.

## DISCUSSION

¶12 *1. Whether the District Court's Order equitably divided the marital estate.*

5

¶13 Dennis argues the District Court abused its discretion when it ordered him to make equalization payments. Dennis claims the record evidence does not support such a decision, and the District Court should have referred to the 2010 property settlement agreement to divide the property. Dennis also claims the District Court erred by adopting the findings of fact and conclusions of law made in Louise's proposed order instead of considering the factors in § 40-4-202, MCA, and making its own findings.

¶14 Section 40-4-202, MCA, governs the distribution of a marital estate. The court must "equitabl[y] apportion between the parties the property and assets belonging to either or both, however and whenever acquired." Section 40-4-202(1), MCA. When apportioning the marital estate,

> the court shall consider the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA. The court must also consider "the contribution of a spouse as a homemaker." Section 40-4-202(1), MCA. "The court must refer to and consider the § 40-4-202, MCA, factors in its findings and conclusions." *Hutchins*, ¶ 30.

¶15 Section 40-4-202, MCA, allows district courts in dissolution proceedings to order cash payments from one spouse to the other to make the overall distribution equitable. *See Smith v. Smith*, 2015 MT 256, ¶ 29, 381 Mont. 1, 358 P.3d 171. Equalization payments must be reasonable and cannot exceed the net worth of the estate. *In re Marriage of Dennison*, 2006 MT 56, ¶ 22, 331 Mont. 315, 132 P.3d 535.

6

¶16 Here, the District Court stated it was "guided by § 40-4-202, MCA," including the factors listed above. The court also considered Louise's dissipation of marital assets and her contribution as a homemaker. The court held an evidentiary hearing and heard testimony from Dennis and Louise about their marriage and assets. The court determined Dennis's estate minus liabilities was valued at $569,341.08 whereas Louise's estate was valued at $0. Considering the lopsided asset distribution, the court awarded Louise equalization payments to offset the initial distribution. The court created a more equitable distribution with Dennis getting 58% of the estate and Louise getting 42%.

¶17 We cannot conclude the District Court erred because the record evidence supports such a distribution. The parties initially maintained a 30-year marriage, plus an approximately 2- to 3-year reconciliation. Throughout their marriage and reconciliation, Louise provided care to Dennis on account of his existing back and neck injuries. Dennis's health is still affected by his injuries, but overall, his health is in reasonable condition. During their marriage, Louise struggled with prescription drug use which she admitted dissipated marital assets during the marriage. During their first marriage, Louise held jobs at a daycare, head start, and grocery store and contributed her earnings to bills and marital expenses. Dennis has maintained his upholstery business and multiple rentals that bring in an approximate monthly income of $3,000. Dennis also owns multiple vehicles, tractors, and recreational equipment, etc. Louise currently does not own any assets. Since their second separation, Dennis has not provided any support to Louise, financial or otherwise.

¶18 Thus, based on the testimony presented by both parties, we find there is sufficient evidence covering each of the factors in § 40-4-202, MCA, to support the District Court's

award of equalization payments to Louise. Considering Dennis's estate consists of the marital home, multiple rental properties, and multiple vehicles—things that are not easily divided—the equalization payments are meant to more equitably divide the marital estate.

¶19 Finally, we find Dennis's argument that the District Court erred by failing to consider the 2010 property settlement agreement is not persuasive. We already addressed this issue and stated "[t]he prior property settlement agreement, while relevant to consider, does not serve as a de facto prenuptial agreement in the current proceedings. The court remains obligated to equitably divide the property in the current dissolution proceedings, considering all the factors under § 40-4-202, MCA." *Schaub*, ¶ 12. On remand, the District Court noted the property agreement was considered but not controlling, and as discussed above, the court properly considered the factors in § 40-4-202, MCA. Thus, we need not further discuss this issue.

¶20 *2. Whether interest should be paid on the award to Louise.*

¶21 Louise argues she is entitled to interest on the installment payments under § 25-9-205, MCA. Dennis counters that Louise did not preserve this issue for appeal because she did not object to it below. Dennis also argues Louise is not entitled to interest under § 25-9-205, MCA, because that statute only applies to civil cases awarding damages in the form of a judgment, and there was no actual "judgment" entered here.

¶22 Montana's post-judgment interest statute, § 25-9-205, MCA, generally entitles a person to interest "on any judgment already rendered but not yet paid." *DeTienne Assocs. Ltd. P'ship v. Farmers Union Mut. Ins. Co.*, 266 Mont. 184, 192, 879 P.2d 704, 709 (1994). M. R. Civ. P. 54(a) defines "judgment" as any decree or order from which an appeal lies.

8

Section 25-9-205, MCA, applies to judgments in marital dissolution cases where the decree is silent about interest. *In re Marriage of Mannix*, 242 Mont. 137, 140, 788 P.2d 1363, 1365 (1990). Post-judgment interest is a right under § 25-9-205, MCA, and is not a discretionary award. *Warrington v. Great Falls Clinic, LLP*, 2020 MT 174, ¶ 10, 400 Mont. 360, 467 P.3d 567. A judgment bears interest from the date of its entry in the trial court even if it is subject to appeal. *Resner v. N. Pac. Ry.*, 161 Mont. 177, 189, 505 P.2d 86, 92 (1973) (overruled on other grounds). When a marital dissolution decree is silent as to interest, the interest is automatically collectible by the spouse on past due payments for support or maintenance, the same as any other money judgment. *In re Marriage of Gibson*, 206 Mont. 460, 466, 671 P.2d 629, 632 (1983). Section 25-9-205, MCA, provides, in relevant part:

> [I]nterest is payable on judgments recovered in the courts of this state and on the cost incurred to obtain or enforce a judgment at a rate equal to the rate for bank prime loans published by the federal reserve system in its statistical release . . . or in any publication that may supersede it on the day judgment is entered, plus 3%. The interest may not be compounded.

Section 25-9-205(1)(a), MCA.

¶23 Here, the District Court's Order qualifies as a "judgment" under M. R. Civ. P. 54, thus § 25-9-205, MCA, applies. The Order did not address whether interest would be applied to the equalization payments, and Louise did not object to the court's silence. However, Louise did not have to object below to the District Court's silence on whether she is entitled to interest because when a marital dissolution order is silent as to interest, the interest is automatically collectible. *Gibson*, 206 Mont. at 466, 671 P.2d at 632. Thus, Dennis's argument that Louise did not preserve the issue for appeal fails. Accordingly, we

9

find Louise is entitled to interest on the equalization payments and we reverse and remand to the District Court to amend the decree of dissolution accordingly.

¶24    Louise also pointed out a scrivener's error in the District Court's payment schedule.[1] The schedule skips the payment months from November 15, 2028, through October 15, 2029, and November 15, 2036, through October 15, 2037.  As Louise pointed out, the payments should span 15, not 17 years and include these inadvertently omitted periods.  It is clear the court made a typing mistake when drafting the schedule.  As such, Louise's corrected payment schedule, attached to her opening brief on appeal as Appendix 3, including calculated interest, should be followed, and we remand to the District Court to amend the decree of dissolution accordingly.

## CONCLUSION

¶25    Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON

---

[1] A scrivener's error is "[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination; esp. a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." *Clerical error*, Black's Law Dictionary (11th ed. 2019 ("Also termed scrivener's error.").