DA 14-0766

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 314

IN RE THE MARRIAGE OF:

VANESSA S. RICHARDS,

   Petitioner and Appellant,

  v.

ERNEST W. TRUSLER and
TRUSLER, INC.,

   Respondents and Appellees.

APPEAL FROM:  District Court of the Sixteenth Judicial District,
       In and For the County of Powder River, Cause No. DR-2011-31
       Honorable Michael B. Hayworth, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Stephen C. Mackey, Towe, Ball, Mackey, Sommerfeld & Turner,
      P.L.L.P., Billings, Montana

   For Appellee:

      Daniel Z. Rice, Avon Whitworth, Lucas & Tonn, P.C., Miles City,
      Montana

          Submitted on Briefs: August 19, 2015
              Decided: November 5, 2015

Filed:

                Clerk

FILED

November 5 2015

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0766

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      In December 2011, Vanessa S. Richards petitioned to dissolve her marriage with Ernest W. Trusler. The couple began their relationship in July 1991, had three children between 1992 and 2000, and formally engaged in a marriage ceremony in May 2008. Prior to 2008, under various circumstances and on multiple occasions, the couple held themselves out as married beginning with the birth of their first child in 1992. On August 8, 2014, the Sixteenth Judicial District Court, Powder River County, issued its Findings of Fact and Conclusions of Law and Decree of Dissolution, dissolving the marriage of the parties and dividing the marital property. Richards appeals the District Court's allocation of assets, arguing it was grossly disproportionate and inequitable. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Richards and Trusler began their relationship in July 1991, at ages 20 and 21 respectively. Later that summer, Richards moved in with Trusler on his family's ranch property, Trusler Ranch, in Ashland, Montana. Richards was working at a local grocery store at the time and Trusler was a ranch hand for Trusler Ranch. In April 1992, the couple had their first child, son TR. TR was born severely disabled and required near constant, full-time care until his death at age 22 on August 12, 2014. Richards and Trusler agreed that TR's care would be provided by Richards. In 1999, Richards gave birth to a healthy daughter, and in 2000, a healthy son was born.

¶3      From 1991 until 2003, Trusler, Richards, and the children lived on the Ranch in a home owned by the family corporation, Trusler, Inc. William and Jacqueline Trusler,

2

Trusler's parents, incorporated Trusler, Inc. and controlled the majority of the stock during this time. Trusler, Inc.'s assets include, among other things, real property, coal leases, cattle, equipment and machinery. At the time of dissolution, Trusler, Inc. was valued at $7.2 million.

¶4 Trusler became a minority stockholder in 1992, an officer of the corporation in 1994 and a member of the board of directors in 1996. He remains both an officer and a director. In addition to these managerial positions, since at least 1990 Trusler has worked, and continues to work, as a Ranch hand. He is paid a salary, provided corporate housing and utilities, an insured company vehicle, health insurance for himself and his family, an annual $6,000 Costco account, and other benefits that the family utilized throughout the parties' relationship.

¶5 In 2003, Richards and the children moved from the Ranch to Broadus, Montana, and in 2004, the couple bought a home in Broadus, which became the primary residence for Richards and the children. Trusler stayed in Broadus some of the time and Richards stayed on the Ranch some of the time. At both home locations, Richards spent her time maintaining the household and providing care for their special needs child and the two other children. Richards testified that she moved the children to Broadus primarily to escape Trusler's then-ongoing alcohol and drug abuse. When circumstances allowed, she cleaned and prepared ranch cabins and bunkhouses for work crews and hunters, cooked meals for work crews, and cleaned Trusler's mother's home. She performed these tasks at times without compensation and at other times for an hourly wage.

¶6 On December 16, 2011, Richards filed a petition for dissolution against Trusler claiming the marriage was irretrievably broken. By agreement of all parties, Trusler, Inc. was named as a party to the dissolution in a later amended petition based upon its co-ownership of Ranch property and corporate stock with Trusler.[1] The parties stipulated to a Final Parenting Plan in May 2014 and neither the parenting plan nor child support is at issue in this appeal.

¶7 In Richards' original petition, her amended petition, and her proposed findings of facts and conclusions of law, Richards consistently sought maintenance from Trusler based upon the lack of sufficient income or assets to provide for her reasonable support. The District Court conducted a bench trial in May and July 2014. In August 2014, the District Court issued its Findings of Fact and Conclusions of Law and Decree of Dissolution. The court valued the marital estate at $2,100,666. The court awarded Richards assets totaling $115,844, an equalization payment of $100,000, and liabilities of $8,200, for a net award of $207,644. It awarded Trusler total assets of $1,984,822, and liabilities of $94,500, for a net award of $1,890,322.

¶8 In September 2014, Richards filed a motion to amend the court's findings and judgment and for a new trial. The District Court denied the motion on October 31, 2014.

¶9 Richards appeals the District Court's apportionment of the marital estate.

---

[1] While the presence of the corporation as a "party" in the case style does not change our analysis or resolution of this case, corporations are not recognized as parties to a marital dissolution under our statutes. Sections 40-4-101 through -136, MCA.

4

## ISSUE

¶10 A restatement of the issue on appeal is: Did the District Court err and/or abuse its discretion in apportioning the marital estate?

## STANDARD OF REVIEW

¶11 The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA, under which a trial court is vested with broad discretion to distribute the marital property in a manner that is equitable to both parties. *In re Marriage of Lee*, 282 Mont. 410, 421, 938 P.2d 650, 657 (1997). When dividing marital property, the trial court must reach an equitable distribution, not necessarily an equal distribution. *In re Marriage of Walls*, 278 Mont. 413, 416, 925 P.2d 483, 485 (1996); *In re Marriage of Kostelnik*, 2015 MT 283, ¶ 18, 381 Mont. 182, ___ P.3d ___. The district court's apportionment of the marital estate will stand unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. *In re Marriage of Larson*, 234 Mont. 400, 402, 763 P.2d 1109, 1110 (1988).

¶12 We also review a district court's findings of fact regarding division of marital property, child support, and maintenance awards to ascertain whether they are clearly erroneous. *Patton v. Patton*, 2015 MT 7, ¶ 18, 378 Mont. 22, 340 P.3d 1242 (internal citation omitted). We apply a three-part test to determine if a finding is clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence we will determine if the trial court has misapprehended the effect of evidence. Third, if

5

substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that "A finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the [C]ourt with the definite and firm conviction that a mistake has been committed." *Interstate Prod. Credit Ass'n v. Desaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991). If the findings are not clearly erroneous, we will affirm the distribution of property unless the trial court abused its discretion. *Patton*, ¶ 19. The standard of review for an abuse of discretion in a dissolution proceeding is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, 961 P.2d 738, *overruled on other grounds by In re Funk*, 2012 MT 14, 363 Mont. 352, 270 P.3d 39.

## DISCUSSION

¶13 *Did the District Court err and/or abuse its discretion in apportioning the marital estate?*

¶14 Richards argues on appeal that the District Court inequitably apportioned the marital estate. She requests that we vacate the court's order and remand for a new trial to determine an equitable apportionment. Trusler responds that the court's award is appropriate, that there is no injustice to Richards, and that Richards did not make substantial contributions to the Ranch business.

¶15 Section 40-4-202(1), MCA, provides:

> In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall, and in a proceeding for legal separation may, finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether

6

the title to the property and assets is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage, property acquired by gift, bequest, devise, or descent, property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent, the increased value of property acquired prior to marriage, and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which the contributions have facilitated the maintenance of the property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

¶16 At the time of dissolution Trusler, Inc. held assets of $7,262,118, consisting of 10,108 deeded acres of land, income-generating leases with coal companies, gravel pit income, cattle, equipment, machinery, and bank deposits. It is a closely held corporation whose board and management has historically been, and continues to be, comprised exclusively of Trusler family members. The members of the corporation's current board are Trusler's mother, Trusler, and his brother and sister.

¶17 Trusler has worked at the Ranch for the majority of his life. In 1992, he was given as a gift 29 shares of the corporation's 2,109 shares. At that time, his stock constituted 1.375 % ownership in Trusler, Inc. Each year from 2007 through 2009, Trusler received

7

as gifts 24 shares of stock. In June 2009, Trusler's father died. In February 2011, Trusler inherited 402 shares of corporate stock from his father's estate and shortly thereafter received 8 additional shares, bringing his total at the time of marital dissolution to 511 shares of 2,109, or 24.229% ownership of Trusler, Inc. There are corporate restrictions on stock transfer that preclude Trusler from disposing of his shares.

¶18 Additionally, during the time Richards and Trusler were together, Trusler inherited the "Rainey Place" valued at $150,000, a one-third interest in the "Potter Place" valued at $25,000, and a one-fourth interest in the Tongue River Reservoir land and cabin valued at $46,750. Trusler and his two siblings are beneficiaries of a trust established by their father and will receive distribution of the trust's assets upon their mother's death or remarriage.

¶19 Richards acquired relatively few individual assets during the relationship. The couple owned individually or co-owned 11 vehicles and they co-own the Broadus home which, at dissolution, was subject to a $62,000 mortgage.

¶20 The District Court determined the net worth of the marital estate was $1,997,966. This included the couple's vehicles, cows, Broadus home, and Trusler's inherited or gifted real property and corporate stock. The court apportioned the following marital assets to Richards: 4 of the family's used vehicles valued at $13,200, 2 Ranch cows valued at $2,644, and the Broadus home valued at $100,000. The court assigned Richards debts totaling $8,200. The District Court also awarded Richards a $100,000 equalization payment to be paid in 10 increments of $10,000 annually. Richards' total net award was $207,644. Additionally, Trusler was ordered to pay Richards spousal

8

maintenance of $2,000/month to assist in the care of TR. These payments were to continue for 3 months beyond TR's death or other defined circumstances. The Dissolution Decree was issued on August 8, 2014. TR died on August 12, 2014. Richards therefore received a total of $6,000 in spousal maintenance per the Dissolution Decree.

¶21 The District Court apportioned the following assets to Trusler: 7 family-owned used vehicles valued at $31,057, the complete value of his interests in the Rainey Place, the Potter Place and the Tongue River property totaling $221,750, and the value of his 24.229% interest in Trusler, Inc. at $1,732,015. Trusler was assigned the following liabilities: the $62,000 Broadus home mortgage, the remaining balance due on one of the vehicles he was awarded, and miscellaneous medical and credit card bills. His liabilities totaled $94,500, resulting in a total net award of $1,890,322.

¶22 As required by § 40-4-202(1), MCA, the District Court considered the factors set forth in the first three sentences of § 40-4-202(1), MCA—the "general purpose" section of the statute as it was characterized in *Funk*, ¶ 13. The court analyzed the duration of the parties' marriage, beginning with a determination of whether the parties' time together before the May 10, 2008 wedding ceremony constituted a common law marriage. The court concluded that the record did not support the statutory or common law presumption of marriage. It determined therefore that the parties' marriage began on May 10, 2008. However, the court then applied our ruling in *In re Marriage of Clark*, 2003 MT 168, ¶ 16, 316 Mont. 327, 71 P.3d 1228, in which we upheld a district court's consideration of a parties' premarital cohabitation in equitably apportioning the marital estate. The

9

District Court considered the parties' time together beginning in 1991 and issued findings of fact that "specifically noted considerations related to the length of the parties' relationship and the ongoing care needs for TR to be provided by [Richards], [Richards'] absence of other assets, employment or income opportunities, and the significant resources available to [Trusler]." The specific findings related to these factors are supported by the record.

¶23 Turning to the remaining factors set forth in § 40-4-202(1), MCA, the District Court noted the parties' respective ages, good health, and that neither party had been married previously. It addressed their occupations, amounts and sources of incomes, skills, employability, liabilities, custodial provisions, and the opportunity of each for future acquisition of capital assets and income. The court also repeatedly referenced Richards' contribution as a homemaker and to the family unit. The District Court discretely divided Richards' awards into three categories: apportionment of the marital estate, an equalization payment, and maintenance.

¶24 The court next turned its attention to distribution of the assets acquired by Trusler through family gifts and inheritance—the "inherited property" section of the statute as referenced in *Funk*, ¶ 14. The court noted Richards' nonmonetary contributions as a homemaker and determined that while this work supported Trusler's work as a Ranch hand and allowed Trusler to work outside the home, Richards devoted "relatively minor" time to work as a "traditional ranch wife" in the service of Trusler Ranch.

¶25 After issuing numerous factual findings that are supported by the record, the District Court determined that equitable distribution of the marital assets to Richards

would be accomplished by awarding her the Broadus house, 4 used cars and 2 cows for a total property amount of $115,844. As "equalization" to Trusler's interest in Trusler Inc. worth $1,732,015, the court awarded Richards $100,000 to be paid in $10,000 increments over 10 years. As noted above, the court also instructed Trusler to pay Richards maintenance in the sum of $2,000/month for the remainder of TR's life and for three months thereafter. TR died 4 days after the Dissolution Decree was issued, and therefore Richards received $6,000 in maintenance.

¶26 Relying on *Funk*, Richards argues that the District Court improperly minimized her contribution as a wife and homemaker, resulting in a lesser apportionment than had she been found to be a "traditional ranch wife" who provided services that enhanced the value of the gifted or inherited property. As we are determining the equitability of the apportionment based upon all relevant factors, we need not dwell on this distinction. In *Funk*, ¶ 26, we expressly rejected the notion that the non-acquiring spouse is entitled only to the equitable share of the appreciated or preserved value of the acquiring spouse's gifted contributions attributable to her efforts.

¶27 In *Funk*, the parties were married approximately 20 years. Both parties were working at the time they married but the wife later became a full-time homemaker and raised their daughter. During the marriage the husband inherited over 115 acres of property, 2.5 acres of which was lakefront property on Flathead Lake. On appeal, the primary issue became the district court's distribution of the inherited property. *Funk*, ¶ 3. Based upon the wife's contribution to the family, the district court fashioned an apportionment under which she received one-half the value of the lakefront property and

11

one-third of the increased value of the non-lakefront property, totaling $344,167 to be paid by the husband within six months of the decree. The court also awarded the wife one-half of husband's employment retirement. *Funk*, ¶¶ 4-5.

¶28 In our analysis in *Funk*, we noted that "much confusion" had developed through our case law over the interpretation and application of § 40-4-202(1), MCA. We concluded that the Court had "moved away from the overarching premise of the statute in an attempt to interpret and apply those portions of the statute that specifically address the division of . . . property acquired by gift, bequest, devise or descent." *Funk*, ¶ 16. We therefore reaffirmed that the overarching premise of the statute is to "finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." *Funk*, ¶ 16. We explained that while the statute specified particular matters to be considered in dividing inherited property, the statute did not provide "that these 'considerations' constitute a constraint on the district court's essential mandate, which is to equitably divide all assets of the parties, however and whenever acquired." *Funk*, ¶ 16.

¶29 Richards points out that her $100,000 equalization payment constitutes less than 6% of the value of Trusler's Ranch interest of $1,732,015. She further notes that her entire award of $207,644 is just slightly more than 10% of the net marital estate of $1,997,966. She maintains that these percentages reflect an inequitable distribution and an abuse of discretion warranting reversal and remand.

¶30 *In re Marriage of Berthiaume*, 173 Mont. 421, 567 P.2d 1388 (1977), supports Richards' argument. In *Berthiaume*, the parties were married approximately six years and had two children. The wife had worked for the first four years of the marriage and then stayed home with the couple's children. *Berthiaume*, 173 Mont. at 422, 567 P.2d at 1389. During the marriage, the parties purchased and sold a home in Helena, Montana, and purchased another home in Elliston, Montana, using funds from the Helena sale. *Berthiaume*, 173 Mont. at 423, 567 P.2d at 1389. Upon dissolution, the district court awarded the marital home to the husband without making an offsetting provision for the wife. We observed that the total market value of property awarded to the wife constituted less than 10% of that awarded to the husband and such an award was "directly contrary" to a requirement that "property . . . be divided as equally as possible." *Berthiaume*, 173 Mont. at 424-25, 567 P.2d at 1390.

¶31 We acknowledge that an equitable award does not mean an equal award. We nonetheless conclude that Richards' award of 6% to 10% of the value of the marital estate does not constitute an equitable award under the circumstances of this case and thus amounts to an abuse of discretion by the District Court. As noted above, in its Findings of Fact and Conclusion of Law and Decree of Dissolution, the court repeatedly gave Richards credit for her extraordinary contribution to TR, the other children, and to running the family household. The court further correctly found that Richards was not "voluntarily underemployed" throughout the marriage. The court appropriately observed that she had no retirement funds and probably would not qualify for future social security benefits, and that her job prospects were limited or non-existent as long as TR was alive.

13

Taking account of these factors, however, the court nonetheless unduly minimized Richards' contributions as a wife and homemaker and failed to acknowledge that Richards was unable at present to be self-supporting or to perpetuate the standard of living the parties enjoyed during their relationship and marriage. Upon dissolution of the marriage, Richards lost her financial underpinning. Once divorced, Richards became responsible for everyday and extraordinary household expenses, such as groceries, fuel, clothing, payment of her health, automobile and home insurance, taxes, and maintenance costs on the Broadus home. In addition, she still has two teenagers at home through 2017. Clearly, in the absence of maintenance, the apportionment fails to provide Richards with sufficient property to provide for her reasonable needs. We therefore set aside the court's apportionment and remand for a new trial on the issue of equitable division of the marital estate.

¶32    As noted, Richards requested an award of maintenance in the District Court. However, the court awarded her maintenance only for as long as TR survived. Once TR died within days of the entry of the decree of dissolution, the award of maintenance terminated. On remand, the court should re-apportion the marital estate to achieve a more equitable result. In addition or in the alternative to reapportionment, the court may also consider imposing a maintenance award in favor of Richards, pursuant to § 40-4-203, MCA.

**CONCLUSION**

¶33    We conclude that the trial court erred in failing to achieve an equitable distribution of the marital estate, and that the court's award constituted an abuse of discretion

14

resulting in substantial injustice to Richards. We therefore affirm the court's dissolution of the marriage of the parties, but reverse and remand for a more equitable apportionment of the marital estate, consistent with the provisions of this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

Justice Jim Rice, concurring.

¶34 The Court discusses the *Funk* holding at length, Opinion, ¶¶ 22-28, but ultimately concludes, as it must, that the District Court did not misapply *Funk*. Indeed, the District Court meticulously explained and carefully applied *Funk*, our other holdings, and the statutes, and the Court can point to no error in its legal analysis. Instead, the Court reverses based upon what is, in reality, only a subjective feeling that the property distribution simply is not equitable. Opinion, ¶ 31. While I reluctantly join the Court's decision, it is not without misgivings about the propriety of second-guessing the District Court's judgment, and I believe several points should be clarified.

¶35 This case presented the District Court with numerous contrasting equities that it wrestled with extensively. Basically, Trusler was a wage earner for most of the parties' relationship, having little ownership interest in the ranch until late in the marriage. Long before then, Richards had moved to Broadus and had ceased to be involved in the ranch

15

operations. Trusler supported the family household in Broadus by providing Richards with $2,330 per month for over 10 years. The Court generously credits Richards with performing ranch tasks "at times without compensation," Opinion, ¶ 5, but the District Court clearly found that Richards had received a wage for all of her ranch work except for "occasionally cook[ing] meals for work crews," leading it to conclude that "the extent and contribution of her work" on behalf of the ranch "was relatively minor." The bulk of the value of the marital estate was from land that Trusler inherited, and the Court cannot fault the District Court's handling of this property under *Funk*. The Court uses the value of the inherited land interest to present a stark value contrast between the parties' distributions, but it should be clarified, first, that Richards made no claim at all to a significant portion of it, valued at about $412,000. Further, a difference in value alone does not necessarily render the distribution inequitable. We clearly held in *Funk* that the district court has discretion to distribute inherited property to a single party if the evidence supports such a result. *Funk*, ¶¶ 19, 32. In its initial decision, the District Court found a number of reasons in the evidence to award the property to Trusler, and even though the Court is returning the case for a revised distribution, those reasons remain valid considerations.

¶36 What convinces me to join the Court's opinion is the District Court's findings that Richards' work in the family home during the course of the relationship, including attending to the needs of the parties' disabled son, TR, "supported [Trusler] and his work as a ranch hand, and allowed [Trusler] to work outside the home . . . ." Richards' provision of TR's extensive care, at the expense of any of her own career interests,

16

enabled Trusler to dedicate his efforts to the ranch that ultimately resulted in his gaining an extensive ownership interest in it. Consequently, I agree that Richards is entitled to sufficient support for a sufficient time to enable her to adjust to the changed circumstances of her life brought about by both the dissolution of the marriage and the passing of TR.

/S/ JIM RICE