FILED

05/23/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0307

DA 22-0307

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 94N

IN RE THE MARRIAGE OF:

JOSHUA ARNOLD BACON,

       Petitioner and Appellant,

  and

EMILY ANN BACON,

       Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. DDR-2021-141
                Honorable Christopher D. Abbott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          David B. Gallik, Gallik Law Office, PLLP, Helena, Montana

      For Appellee:

          Robyn L. Weber, Weber Law Firm, Helena, Montana

                        Submitted on Briefs:  April 26, 2023

                                Decided:  May 23, 2023

Filed:

                    _____
                            Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Joshua Bacon (Joshua) appeals from the January 5, 2022 Order Amending Interim Parenting Plan; the May 24, 2022 Final Parenting Plan; and the May 24, 2022 Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage issued by the First Judicial District Court, Lewis and Clark County, establishing that the parties' children, M.A.B. and L.A.B., shall reside on a primary basis with their mother, Emily Bacon (Emily), and dividing and distributing the parties' assets and debts between them. We affirm.

¶3 Joshua and Emily were married on March 16, 2015. As a result of their relationship, they have two children, M.A.B., born in 2015, and L.A.B., born in 2017. Both Joshua and Emily worked as helicopter pilots in Helena until they were both laid off in December 2018. Thereafter, Joshua obtained new employment based in Butte and Emily became a full-time, stay-at-home mother and served as the children's primary caregiver. The parties separated in March 2021. Ultimately, Emily sought to amend the interim parenting plan in place to provide for the parties' children to move to and reside on a primary basis with her in Utah, where she secured employment as a customer relations advocate with Fidelity

Investments.  Following hearing, the District Court granted her motion and issued its Order Amending Interim Parenting Plan on January 5, 2022.  Following trial in February 2022, the District Court issued a Final Parenting Plan on May 24, 2022, which provided for the children to reside on a primary residential basis with Emily and for Joshua to have parenting time with the children during summers, floating long weekends, and special occasions.

¶4     With regard to parenting issues, Joshua contends it was error for the District Court to amend the interim parenting plan only six weeks before trial.  He also contends it was error for the District Court to enter the Final Parenting Plan "where Emily and the children lived in the basement of a home in Utah which was owned and occupied by Emily's step father [sic], who was accused of sexual abuse by his biological daughter while she was a minor."  With regard to property and debt issues, Joshua asserts the District Court erred in adopting Emily's valuation of personal property and of repair costs to the Taurus vehicle which was damaged while in Emily's care.  Contrarily, Emily asserts that, although now moot, it was not an abuse of discretion for the District Court to grant Emily's request to amend the interim parenting plan to allow her to move to Utah with the children to accept her new job with Fidelity Investments.  Further, she asserts it was not an abuse of discretion for the court to issue the Final Parenting Plan as it was supported by substantial, credible evidence and the court made no error in valuing personal property or assessing cost of repair for the damage which occurred to the Taurus.

¶5     We review a district court's findings establishing a parenting plan under the clearly erroneous standard. *In re Marriage of Williams*, 2018 MT 221, ¶ 5, 392 Mont. 484, 425 P.3d 1277 (citation omitted). We review a district court's conclusions of law to determine if they are correct. *In re Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028 (citation omitted). It is not this Court's function to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266. Rather, the ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. *In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *In re Parenting of C.J.*, ¶ 13. We review a district court's division of martial property to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re Marriage of Hutchins*, 2018 MT 275, ¶ 7, 393 Mont. 283, 430 P.3d 502. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that the court committed a mistake. *In re Marriage of Hutchins*, ¶ 7. "A district court's apportionment of the marital estate will stand unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *In re Marriage*

4

*of Hutchins*, ¶ 7 (citing *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126). Each case is considered individually based on its own unique circumstances. *In re Marriage of Hutchins*, ¶ 7 (citing *In re Marriage of Spawn*, 2011 MT 284, ¶ 9, 362 Mont. 457, 269 P.3d 887).

¶6 While Joshua asserts the order amending the interim parenting plan is erroneous and not supported by substantial evidence and the move is not in the best interest of the children, he does not specifically support these assertions with citation to the record, and he ignores the conflicting evidence presented to the contrary. "It is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses. We will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony." *In re Marriage of Lewis*, 2020 MT 44, ¶ 8, 399 Mont. 58, 458 P.3d 1009 (cleaned up) (citation omitted).

¶7 At hearing, the District Court heard evidence that Emily had extensively looked for and had been unable to obtain meaningful work locally, that she had secured a job offer with Fidelity Investments in Utah, that she had for the preceding three years served as the primary care-taking parent of the children, and that Joshua's work schedule required he be away from Helena every other week such that he was not available to parent on a full-time basis were Emily to move to Utah without the children. Based on this evidence alone, the District Court's decision to permit the children to move to and reside with Emily on a

primary basis was supported by substantial credible evidence and was not clearly erroneous.

¶8 Joshua also takes issue with Emily's failure to comply with the criteria of § 40-4-220, MCA, which requires, with regard to an ex parte request for an interim parenting plan, a showing that the children's present environment endangers the children's physical, mental or emotional health. We find no issue in this regard. Although Emily did make an ex parte request for amendment to the interim parenting plan, the District Court denied the request, determining it did not meet the standard for an emergency and instead setting a hearing. Finally, Joshua asserts Emily failed to comply with the criteria of § 40-4-217, MCA, which requires a 30-day written notice be given to the other parent, along with other requirements, before a parent can move with the parties' children. We are, likewise, not persuaded by Joshua's assertion. The purpose of § 40-4-217, MCA, is to protect against one parent moving away with their children without first providing to the other parent proper notice and opportunity to object to the children moving. Here, the District Court provided Joshua opportunity to object and held hearing on Emily's motion. At the hearing on December 6, 2021, Joshua was given opportunity to call witnesses, cross-examine witnesses, present documentary evidence, testify on his own behalf, make objections, and present argument to the court. As such, any deviation by Emily from the requirements of § 40-4-217, MCA, were, in essence, corrected by the District Court. Finally, while it may have been optimal for Emily's job opportunity with Fidelity to present itself after the dissolution trial such that the District Court would then not have had to make

a determination on amendment of the interim parenting plan within six weeks of trial; given that the trial was moved from December 6, 2021, to February 16, 2022, Emily had no option but to seek the amendment when she did.[1]

¶9    Joshua next asserts the District Court erred in issuing a Final Parenting Plan providing Emily would continue to serve as the primary residential parent while she was residing with her mother and stepfather, Bruce Lemon (Lemon), in their home.  Joshua asserts this to be error as Lemon allegedly abused his minor biological daughter in the 1980s; Lemon would at times be alone in caring for the parties' children; Joshua's expert, Susan Anderson, testified that Lemon is likely to repeat the same behavior; and Lemon has not responded to the allegations made by his biological daughter.  From our review of the record, we are not persuaded by Joshua's arguments and characterization of the evidentiary record.  The District Court thoroughly considered the conflicting evidence presented with regard to Lemon.  Contrary to Joshua's characterization of Ms. Anderson's testimony, she did not testify Lemon is likely to repeat the same behavior, but rather offered only general testimony about the risks of untreated sexual offenders.  As found by the District Court, and not contested by Joshua, Anderson did not conduct a psychosexual assessment of Lemon, the evidence pertaining to the allegations against Lemon was stale, and there was not the level of proof that would ordinarily appear in a civil tort or criminal proceeding.

---

[1] Trial was originally scheduled for December 10, 2021.  Emily's job with Fidelity was not slated to start until late December 2021 and she did not expect to have to make an expedited motion seeking permission to move the children to Utah with her.  Due to court calendaring issues, the District Court unilaterally rescheduled trial prompting Emily to bring an immediate motion.

Further, the District Court noted that since Lemon was not a party to this case, Lemon had no opportunity to present any defense to the allegations. Emily testified she has two brothers and two sisters and that together they have 19 children. Her mother married Lemon when Emily was approximately eight years old, and she and her siblings lived in a family home with Lemon and her mother throughout their childhoods. She described Lemon as an "amazing dad," that he had never touched her inappropriately, and there had been no allegations in the 30-plus years Lemon has been around her and her siblings and all of their children. She also testified that throughout she and Joshua's marriage, Joshua was aware of the remote allegations of Lemon's biological daughter and during the marriage they spent time with Lemon and permitted their children to be cared for by Lemon. The District Court was troubled by the timing of Joshua's introduction of these allegations. Ultimately, the District Court concluded it could not find, by a preponderance of the evidence, Lemon to be an abuser, let alone find him to currently present a danger to children in his home. The District Court considered and weighed the conflicting evidence presented and found no present danger to the children from Lemon and gave no weight to the stale allegations against Lemon. From our review of the record, we find nothing to overcome the District Court's findings and conclusion in this regard and find no abuse of discretion.

¶10 Finally, with regard to parenting issues, Joshua asserts clear abuse of discretion and mistake by the District Court in applying the parenting factors of § 40-4-212, MCA, and reiterates the arguments he made at trial without citations to the record to support his

8

arguments. From our review of the record, ample credible evidence supports the findings made by the District Court with regard to each of the factors set forth in § 40-4-212, MCA. For example, Joshua asserts that although Emily testified to having opportunity for employment in Utah, "there has been no specifics nor details regarding such employment. We don't know if she has a job, and if she does, what hours it entails and who attends to the children's needs and stability of care." Contrary to these assertions, Emily testified at trial that she was employed in client services with Fidelity Investments, that she works from home from 8:00 a.m. to 5:00 p.m., and she admitted a paystub from this employment as an exhibit. She further testified that, although she works from home, her mother and Lemon do assist with caring for the children while she works. In the mornings, Emily gets the children ready for their day. While she is working, M.A.B. attends school and when M.A.B. comes home from school Emily is there to visit with her or assist her if she needs anything. Emily puts L.A.B. down for naps during the workday, eats lunch with L.A.B., and is generally available should he need something in particular. From our review of the record, the District Court appropriately considered and weighed the conflicting evidence presented with regard to the § 40-4-212, MCA, criteria and issued an appropriate Final Parenting Plan which is supported by the evidence of record.

¶11 With regard to the division of the parties' assets and debts, Joshua asserts the court failed to have a sufficient evidentiary foundation for the personal property Emily removed during the litigation and instead adopted Emily's valuation without proof other than Emily's saying so. Joshua also asserts the District Court abused its discretion by holding

Emily was not responsible for the cost to repair the Taurus vehicle which was vandalized while in Emily's possession before she returned it to Joshua. Joshua provides no citation to the record, nor analysis or legal citation with regard to these issues. Emily testified as to the personal property she removed from the house, her familiarity with it, and to its valuation. Emily also testified to the Taurus being damaged while parked outside her house, the damage to the car which existed before it was vandalized, and discussed the Collision Pro estimate to repair the hood of the car. From our review of the record, the District Court did not abuse its discretion in accepting Emily's valuation of the personal property or in accepting Emily's repair estimate rather than the repair cost estimate provided by Joshua. The District Court did exactly what it was supposed to do—weigh the evidence, including conflicting evidence, judge the credibility of the witnesses, and make findings based on the evidence presented—and we find no abuse of discretion in it doing so.

¶12 In sum, Joshua's appeal, at its core, seeks that we re-weigh the evidence presented and substitute his perceptions for those of the District Court. We decline to do so.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE