FILED

05/06/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0354

DA 24-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 94N

IN RE THE MARRIAGE OF:

KIRSTEN ANN MARTIN,

Petitioner and Appellee,

and

BRIAN ARTHUR MARTIN,

Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DR-21-196
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

David L. Vicevich, Vicevich Law, Butte, Montana

For Appellee:

Brad L. Belke, Attorney at Law – PLLC, Butte, Montana

Submitted on Briefs:  March 19, 2025

Decided:  May 6, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Brian Martin appeals the April 26, 2024 Findings of Fact, Conclusions of Law and Decree of Dissolution issued by the Second Judicial District Court, Butte-Silver Bow County. The District Court dissolved the marriage, valued and distributed marital property, and implemented a final parenting plan. We affirm.

¶3 Kirsten Case and Brian Martin were married on July 28, 2010, and they have two children together. The parties separated in 2018. Since then, Kirsten has resided in Montana with the children while Brian has resided in Idaho. Kirsten filed a petition for dissolution on December 7, 2021, and the District Court held a bench trial regarding the dissolution on March 22, 2024. Additional facts of this case will be discussed throughout.

¶4 The issues on appeal are whether the District Court erred in its valuation and distribution of marital property, whether the District Court erred in sanctioning Brian, and whether the District Court erred in imposing the final parenting plan.

**MARITAL PROPERTY VALUATION**

¶5 After the hearing, the District Court distributed the marital estate as follows. Kirsten received the residential property in Three Forks, Montana, valued at $825,000, as well as commercial property on which Kirsten operates R & R Pet Resort in Butte, valued at

2

$670,000. The court awarded Brian a residential property located in Idaho, valued at $630,000—the price at which Brian sold the property, despite Brian's intentional misleading of the court to believe he did not own it. Each party received their own personal property and any debt in their name. Kirsten was awarded the R & R Pet Resort business which she operates, and Brian was awarded his construction business, both valued equally at $180,000.

¶6 On appeal, Brian argues the District Court erred in its calculation of the value of the marital properties and businesses owned by the parties. Kirsten counters that Brian did not provide any up-to-date financial documentation to the court to support his assertions of value, and the District Court did not err in relying on her reasonable, though imperfect, valuations.

¶7 We review a district court's division of marital property to determine whether the findings of fact are clearly erroneous and whether the conclusions of law are correct. *Hutchins v. Hutchins*, 2018 MT 275, ¶ 7, 393 Mont. 283, 430 P.3d 502. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that the district court committed a mistake. *Hutchins*, ¶ 7. "A district court's apportionment of the marital estate will stand unless there was a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Hutchins*, ¶ 7 (citing *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126).

¶8    District courts must "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired."  Section 40-4-202(1), MCA. When apportioning the marital estate,

> the court shall consider the duration of the marriage and prior marriage of either party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA.  "While § 40-4-202, MCA, does not require a strict, itemized accounting and valuation of every marital asset and liability in every case, district courts must at least make findings of fact that are sufficient as a whole to manifest an equitable distribution of the marital estate."  *In re Marriage of Elder and Mahlum*, 2020 MT 91, ¶ 9, 399 Mont. 532, 462 P.3d 209 (citations omitted).

¶9    A district court has broad discretion in determining the value of property in a dissolution proceeding, and it is free to adopt any reasonable valuation supported by the record.  *In re Marriage of Funk*, 2012 MT 14, ¶ 28, 363 Mont. 352, 270 P.3d 39.  The district court may value marital property based on credible expert testimony, lay testimony, documentary evidence, or any combination thereof.  *In re Marriage of Crilly*, 2005 MT 311, ¶ 19, 329 Mont. 479, 124 P.3d 1151.

¶10    Here, the court valued the Montana residence at $825,000 which was supported by testimony from Gary Shea, a real estate broker in Butte, Montana, who viewed the property in January 2024.  The court awarded the Montana residence to Kirsten because she has resided there for the past six years with the children.

4

¶11     The District Court valued the Idaho residence at $630,000, which was the price Brian sold the home for and was supported by the financial information Brian provided to the court. As discussed below, the court came to this valuation as part of the sanctions against Brian for concealing this property from the court and misleading the court to believe he did not own it. The court awarded the Idaho property to Brian.

¶12     The District Court valued the commercial property on which R & R Pet Resort operated at $670,000. This value was supported by testimony from Michael McLeod, a Butte real estate agent. The court awarded the property to Kirsten.

¶13     The District Court valued Kirsten's business, R & R Pet Resort, at $180,000. This was supported by Kirsten's testimony that she withdraws $60,000 per year from the business as income. Kirsten testified that she multiplies her income by three to calculate the value of her business. Brian argues on appeal Kirsten did not call an expert witness to substantiate her valuation of R & R Pet Resort at $180,000, and yet the District Court accepted that value as correct. However, Brian did not offer any rebuttal to Kirsten's valuation, nor did he provide any evidence that R & R Pet Resort was worth more or less than $180,000. It is not the District Court's job to procure evidence for its valuation. Rather, a court has broad discretion in determining the value of property in a dissolution proceeding, and it is free to adopt any reasonable valuation supported by the record, including valuation supported by lay testimony. *Funk*, ¶ 14; *Crilly*, ¶ 19.

¶14     Finally, the District Court valued Brian's business as a contractor at $180,000. This valuation was based on the W2 and 1099 forms Brian submitted for his income from 2018, 2019, and 2020. Brian's income from 2021 to 2024 remained undisclosed to the court.

5

Additionally, Kirsten testified that Brian earned approximately $60,000 per year. As such, the District Court concluded Brian's business was nearly equal in value to Kirsten's business based on the reflected earnings from the 2020 1099 of $62,524 and Kirsten's testimony. Brian argues the District Court should have valued his business at $40,700. However, Brian did not provide any financial documentation regarding his business income and the only testimony he gave to support his assertion was that he valued it at $40,700.

¶15 We find Brian's arguments that the District Court misvalued the marital property and businesses unpersuasive. The District Court properly valued and equitably distributed the parties' marital estate based on the evidence presented.

**SANCTIONS**

¶16 While separated, but before the dissolution was final, Brian purchased a property in Idaho. Brian did not disclose this property to the District Court nor respond to Kirsten's discovery requests regarding the property. As a result, Kirsten filed a M. R. Civ. P. 37 motion for sanctions against Brian. The court held a show cause hearing on July 31, 2023. The District Court gave Brian 30 days from the show cause hearing to provide documentation regarding ownership of the Idaho property. On August 11, 2023, Brian filed documentation showing he was the legal owner, and the property had sold for $630,000. Based on Brian's willful misleading of the court, it imposed sanctions declaring the Idaho property was a marital asset valued at $630,000 and awarded the property to Brian as part of his share of the marital estate.

¶17 On appeal, Brian asserts the District Court abused its discretion in the magnitude of sanctions it imposed. Brian asserts he should have been allowed to testify as to the land and construction costs of the Idaho property, and the court should have given a justifiable reason, other than sanctions, for valuing the Idaho property at $630,000.

¶18 Kirsten asserts the sanctions were appropriate given Brian's misconduct. During their separation, Kirsten knew Brian was building a home to sell for a profit, and she attempted to contact the material suppliers to find out how much marital funds Brian was using. Kirsten asserts in her brief on appeal that "[t]o this day, neither [she] nor the trial court have any idea of Brian's actual equity in the [Idaho] home, the income gained from its rental, the value of the accompany[ing] lots, the extent of his personal property, his income, or his assets."

¶19 We review a district court's imposition of sanctions for abuse of discretion. *Linn v. Whitaker*, 2007 MT 46, ¶ 13, 336 Mont. 131, 152 P.3d 1282. An abuse of discretion occurs when the district court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Whitaker*, ¶ 13. The district court is in the best position to know "which parties callously disregard the rights of their opponents and other litigants seeking their day in court" and which sanction is most appropriate as a result. *Whitaker*, ¶ 13. Rule 37 allows a court to impose sanctions when "a party . . . fails to obey an order to provide or permit discovery." M. R. Civ. P. 37(b)(2)(A).

¶20 Based on Brian's willful concealment of information regarding the Idaho property and disregard for court orders to provide such information, we find the District Court did

7

not abuse its discretion in imposing the sale price as a value of the home and precluding Brian from introducing evidence at the trial trying to reduce the value of the property. From the time the petition for dissolution was filed in December 2021 to the show cause hearing on July 31, 2023, Brian failed to respond to discovery, failed to adhere to the court's scheduling order, and misrepresented ownership of the Idaho property. After finally complying on August 11, 2023, the court determined Brian was the legal owner, and the Idaho property sold for $630,000. "The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith. Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation." *Whitaker*, ¶ 15. As such, we find the District Court's order falls within its broad discretion to determine an appropriate sanction.

**PARENTING PLAN**

¶21 The children have lived primarily with Kirsten since 2018 during the informal separation, and Brian has exercised sporadic parenting time over the years. Prior to the bench trial, both parties submitted their proposed parenting plans to the District Court. Brian proposed a two-week on, two-week off schedule, but Kirsten opposed such as being impractical due to the children's schooling, extra-curricular activities, and the hours long round-trip drives between Idaho and Montana. The District Court appointed a guardian ad litem to report on the children's best interests. The report suggested Kirsten receive primary parenting during the school year. Brian would parent the children one week after

8

their schooling was over through the summer until one week before the next school year began.

¶22 At the trial, Kirsten testified the children had never been away from her for more than a week, and a 90-day placement with Brian during the summer was not in their best interests because Brian lacked basic parenting skills. Kirsten also testified Brian lived in a camper, lacked basic hygiene, would not provide a proper diet, and had an overall inability and lack of desire to parent the children. Brian testified he loved his children and would do anything for them.

¶23 The District Court found that based on the distance between Kirsten and Brian's residences, it would be in the children's best interest to have stable, continuous care and continue to primarily reside with Kirsten in Montana. The final parenting plan allotted Brian two weeks per month of parenting time in Idaho during June, July, and August, as well as weekend parenting time in Montana with seven days' advance notice to Kirsten and alternating holidays.

¶24 This Court reviews findings of fact supporting a parenting plan to determine whether they are clearly erroneous. *Tubaugh v. Jackson*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. A finding of fact is clearly erroneous when it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us that the district court made a mistake. *Tubaugh*, ¶ 12. We review conclusions of law to determine if they are correct. *Tubaugh*, ¶ 12.

¶25 Brian argues the parenting plan afforded him very little parenting time which is not in the best interests of the children. Brian asserts the District Court did not provide

9

sufficient reasoning for why it did not follow the guardian ad litem's report that recommended Brian parent the children for most of the summer. Brian asserts there was not sufficient testimony or evidence presented to allow the District Court to deviate from the report's recommendations like it did.

¶26 Here, the District Court thoroughly discussed each factor under § 40-4-212, MCA, in determining whether the parenting plan was in the best interests of the children. The court found the children had primarily resided with Kirsten since 2018. During that time, Brian had only exercised parenting time with the children sporadically. This was supported by testimony from Kirsten during the hearing. The court considered the factors and found it was in the children's best interests to reside with Kirsten in Montana rather than be shuttled between Montana and Idaho every two weeks like Brian initially proposed.

¶27 Based on the above evidence, we find the District Court did not err in imposing the final parenting plan it did. The record supports the court's findings of fact, and its conclusions of law were correct.

¶28 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶29 Affirmed.

/S/ INGRID GUSTAFSON

10

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE